UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| LAURIE ANN FUTRAL CHASTANT | CIVIL ACTION NO. 11-CV-626 |
| VERSUS | JUDGE HAIK |
| PRUDENTIAL INSURANCE CO. OF AMERICA | MAGISTRATE JUDGE HANNA |

MEMORANDUM RULING

This case involves an effort by the widow of Dr. Robert Chastant to collect death benefits allegedly owed to her as a result of his murder in December of 2010. It is contended by one or more of the defendants that the plaintiff has not been excluded by law enforcement as a suspect in the murder of her husband, and therefore, they are unable to determine the proper beneficiary. Before the Court are two Motions to Quash Witness Subpoenas filed by Sheriff Louis M. Ackal [Doc. 32 and 35]. The motions arise out of the issuance of two separate subpoenas to Jerry "Bubba" Savoie, whose real name is Gerald Savoy, to appear and testify in a deposition. One subpoena was issued by the plaintiff [the subject of Doc. 32], and the other by the defendant, Paul Chastant, as Trustee on behalf of Robert B. Chastant D.D.S. Defined Benefit & Profit Sharing Plan [the subject of Doc. 35]. For the reasons which follow, the motions will be GRANTED.

## *Factual background*

Savoy is the Commander of the Bureau of Investigations of the Iberia Parish Sheriff's Office who has overall control of the murder investigation. On June 14, 2011, Ismaeil Viera-Tovar pleaded guilty to the murder of Dr. Chastant in the 16th Judicial Court for the Parish of Iberia. The parties attempted to depose Viera after his plea, however, he refused to testify. Therefore, as he is "unavailable," the parties wish to depose Captain Savoy and review the investigative file materials to determine what Viera told the police.[1]  In particular, the defendant contends he needs this information in order to oppose a motion for summary judgment filed by the plaintiff on August 26, 2011 which is currently set for hearing on October 13 before the district court.[2]

Sheriff Ackal bases the motions on La. R.S. 44:3(A), a provision of the Louisiana Public Records Act, which exempts from 'public records' disclosure records or information pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been

---

[1] The actual subpoenas are not in the record, and it was not clear whether the deposition notices called for testimony and/or document production. However, at the evidentiary hearing, the parties indicated they sought the production of statements of Viera. It was determined that there were no written statements, rather, the documents in question were summaries prepared by detectives from their interviews of Viera.

[2] Doc. 45.

finally adjudicated or otherwise settled.

In opposition to the motions, the defendant argues that the public records provision "is inapplicable to the issues before the Court." [3] Both the plaintiff and the defendant contend that federal law applies to determine whether the documents are privileged and that this Court should apply the ten factors found in *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D. Pa. 1973). According to the plaintiff, the Court should conduct an *in camera* inspection of the documents, then apply the *Frankenhauser* factors per *In re: United States Department of Homeland Security,* 459 F.3d 565, 570 (5th Cir 2006).

Consistent with Louisiana law, the subject motions were set for evidentiary hearing on September 2, 2011 in which evidence was received in the form of testimony from Captain Savoy, the minutes and transcript of the change of plea hearing of Viera, the autopsy report of the decedent, and the *Pro Se Verbal* of Viera's deposition at which Viera refused to testify. In addition, the Court received, for *in camera* inspection, the summaries of the interviews of Viera which the parties wish to have produced and the movant seeks to protect.

According to Savoy, there is an ongoing criminal investigation into the

---

[3] Doc 36, p. 3.

murder of Dr. Chastant and the information contained in the summaries contains detailed information that would prejudice the investigation if disclosed. In addition, investigators are awaiting test results of DNA samples and carpet fiber evidence that are currently being analyzed at the Crime Lab which, once returned, may lead to interviews of additional witnesses.  The file materials contain other information, including the location of a witness which, if disclosed, presents a security issue, detective's notes, as well as notes of witness interviews, telephone toll information and a listing of evidence accumulated thus far.  Other than in conjunction with the prosecution of Viera, the case has not been submitted to the Grand Jury, and until such time as the investigation is complete and the material is turned over to the District Attorney, Captain Savoy is not in a position to say whether the case ever will be submitted to the Grand Jury.

     Captain Savoy testified that the turnaround for results from the Crime Lab is difficult to determine given the volume of samples submitted.  However, the evidence was submitted approximately two months ago under a high-priority flag from his office and "assuming normal circumstances," he would expect a turnaround time of two-three months from the date of the hearing.

## *Applicable Substantive Law*

The examination of the pleadings conducted by the undersigned reveals that, as conceded by the parties, even though there is a claim brought under ERISA in this litigation, all of the claims on the merits will be determined by applying state substantive law as this court's jurisdiction is based on diversity. [4]

Under F.R.E. Rule 501:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Since the federal evidentiary rules apply and state law supplies the rule of decision on all of the underlying claims, the analysis of asserted evidentiary privileges will be made based on state law. However, the Court finds the result would be the same under either federal common law or state statutory law.

The Fifth Circuit has specifically clarified the existence of a law enforcement privilege "beyond that allowed for identities of confidential informants."[5] After conducting a lengthy jurisprudential analysis, citing *Coughlin v. Lee,* 946 F.2d

---

[4] The parties agree that even though at least one of claims made in this litigation involves interpretation of ERISA qualification/disqualification standards, that interpretation will be made based on state law.

[5] *In re: United States Department of Homeland Security,* 459 F.3d 565, 569 (%th Cir. 2006).

1152, 1159-1160 (5th Cir. 1991) the Fifth Circuit instructed the district court to conduct an *in camera* review to evaluate whether the law enforcement privilege applies to the pertinent documents:

> In making its determinations, the court must balance 'the government's interest in confidentiality against the litigant's need for the documents.' . . . The court, therefore, should consider the *Frankenhauser* factors.
>
> \*   \*   \*
>
> 'Although a district court has considerable leeway in weighing the different factors, . . .the failure to balance at all requires remand . . . to consider the respective interests' . . . Here, the district court must apply the *Frankenhauser* test, even if in a flexible manner, when making its privilege determinations.

*In re United States Department of Homeland Security,* 459 F.3d at 569-570, (citations omitted).

As set forth below, in applying the the Public Records Act exception to determine whether disclosure should be precluded, the Louisiana Supreme Court called for the consideration of *Frankenhauser*-like objective factors in the balancing process. *In re: Matter Under Investigation,* 2007-1853 (La. 7/1/09); 15 So.3d 972, 991-993.

The purpose of the Louisiana Public Records Act is to keep the public reasonably informed, while at the same time balancing the public's right of access against the public interest of protecting and preserving the public records from

unreasonable dangers of loss or damage, or acts detrimental to the integrity of the public records. The Act sets forth the means by which a person may obtain access to public records. It also recognizes exceptions which restrict access to some records. Among the exceptions is La. R.S. 44:3(A)(1), relied upon by the mover in this case, which provides:

> A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts, intelligence agencies, or publicly owned water districts of the state, which records are:
>
> (1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled, except as otherwise provided in Subsection F of this Section; ...
>
> C. Whenever the same is necessary, judicial determination pertaining to compliance with this section or with constitutional law shall be made after a contradictory hearing as provided by law. An appeal by the state or an officer, agency, or department thereof shall be suspensive....

Louisiana courts considering the question have defined "criminal litigation" to be an adversarial contest begun by formal accusation and waged in judicial proceedings in the name of the State. Criminal litigation is "pending" when the formal accusation is instituted either by the district attorney(bill of information) or by the grand jury(indictment). *Nix v. Daniel*, 669 So.2d 573, 575(La. App. 1st Cir.

1996). As there has been no indictment or bill of information filed against anyone other than the defendant Viera, even though that judgment may not yet be final, there is arguably no criminal litigation pending. Therefore, the issue is whether criminal litigation can be reasonably anticipated. The Louisiana Supreme Court provided explicit guidance in determining this issue:

> The generally understood meaning of the term reasonably anticipated is reasonably foreseen or contemplated. The term reasonably anticipated does not require a certainty or even a near certainty. Thus, criminal litigation can be said to be reasonably anticipated when it is reasonably foreseen or contemplated. The plain language of the statute does not require a finding that criminal litigation will be pursued or will almost certainly be pursued for the exemption to apply. Rather, the exemption applies if it is reasonably foreseen or contemplated, i.e., if it is reasonably anticipated, that criminal litigation will be brought against some potential criminal defendant who was part of the investigation.
>
> \* \* \*
>
> [T]he determination of whether criminal litigation is reasonably anticipated within the meaning of La. R.S. 44:3 must be made on a case-by-case basis in the context of a contradictory hearing wherein the opportunity to present evidence and cross-examine witnesses is present. The determination must rest on more than an assertion by the prosecutorial authority that criminal litigation is or is not reasonably anticipated. Were the determination based solely on the testimony of the prosecutor, inconsistencies and caprice could enter the determination of whether the Public Records Act requires disclosure of the records at issue. The prosecutorial authority could change its mind, a new prosecutorial administration could enter office, new evidence could be discovered, a witness could come forward, or an absconded defendant could be found. The determination of whether criminal litigation is reasonably anticipated is subject to factors both within the

> prosecutorial authority's discretion and outside of its control.
>
> We therefore find that a court's determination of whether criminal litigation is reasonably anticipated pursuant to La. R.S. 44:3(A)(1) must be guided by objective factors. These factors must serve the dual purpose of protecting the public's right to know and safeguarding a prosecutorial authority's ability to preserve the integrity of an investigatory file when criminal prosecution is reasonably anticipated, which is the purpose of the limited exemption provided by the statute at issue. The determination should take into account, among other things the court finds relevant: whether criminal litigation may still be initiated given the prescriptive period of the offense to be charged; the temporal and procedural posture of each case; whether criminal litigation has been finally adjudicated or otherwise settled; the assertion of the prosecutorial authority as to its intent or lack thereof to initiate criminal litigation; whether the prosecutorial authority has taken objective, positive and verifiable steps to preserve its ability to initiate criminal litigation, including, but not limited to, preserving evidence, maintaining contact with witnesses, and continuing an investigation; the time it would take to appropriately investigate and try an offense; the prosecutor's inherent authority to determine whom, when and how he will prosecute, La.C.Cr.P. art. 61; the severity of the crime; the availability of witnesses, victims and defendants; the spoilation of evidence; the reasonable likelihood that a missing witness or an absconded defendant might be found; and the reasonable likelihood that additional witnesses might be willing to come forward with the passage of time. As always, the burden of proving that the record is not subject to inspection, copying, or reproduction by a member of the public rests with the custodian. La. R.S. 44:31(3).

*In re: Matter Under Investigation,* 2007-1853 (La. 7/1/09); 15 So.3d 972, 991-993.

Under federal common law, the *Frankenhauser* analysis calls for the court to weigh ten factors:

> (1) the extent to which disclosure will thwart governmental processes by

discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*In re: U.S. Department of Homeland Security,* 459 F.3d 570.

### *Analysis*

The Court finds, by applying the factors required by the Louisiana Supreme Court, there is criminal litigation that is "reasonably anticipated" under the Louisiana statute. Further, the Court finds that the exemption to disclosure under the Public Records Act is applicable to bar the discovery sought at this stage of this litigation.

The criminal investigation by the Sheriff's Office is and has been quite active over the last nine months and may come to a fairly prompt conclusion one way or the other once the DNA/carpet fiber analysis results are received from the Crime Lab. The sheriff's office has requested the analysis be given priority treatment and the period to await the results could be as little as 60 to 90 days.

The decedent was murdered in a highly publicized incident nine months ago. The law enforcement authorities have not concluded that Viera, who pleaded guilty to the murder, acted alone. They have continued to conduct their investigation in a manner that reasonably advances the investigation by identifying witnesses, obtaining telephone toll records, conducting interviews and obtaining DNA/carpet fiber samples which have been submitted for analysis. In short, the investigation continues to proceed to the point it can be submitted to the district attorney for determination of whether to bring the case to the Grand Jury. However, it has not yet reached that point due to the delay in obtaining the results from the Crime Lab.

The delay in payment of insurance benefits may be understandably difficult on the plaintiff, and the defendant is in a position that it cannot reasonably oppose the pending motion for summary judgment on the merits because the law enforcement authority is in possession of the information the defendant needs and Mr. Viera is not willing to testify. There can be little dispute the information sought is important and cannot be discovered from other sources at this point.

However the fact remains that there is an ongoing, active, murder investigation and the plaintiff has not been eliminated as a suspect. There are witnesses whose identity, location and statements need to be protected until, at a minimum, the DNA/carpet fiber analysis results come back. The statement

summaries from interviews of Viera are of such detail that disclosure at this stage could undermine the investigation. In addition, the files contain both factual data and evaluative summaries along with other evidence, which if disclosed prior to the completion of the investigation, could also undermine the investigatory process.

Under federal common law, *Frankenhauser* factors 1, 2, 4, 5, and 6, as set forth in the above analysis, militate strongly in favor of protecting the information from disclosure at this time. Factors 3 and 7 are not applicable. Factors 8, 9 and 10 weigh in favor of allowing the discovery.

There is no evidence of unreasonable delay, lack of purpose or any ulterior motive to protect the information this Court finds relevant from disclosure other than to protect the integrity of the investigation. The Court finds that the factors, when balanced between the public's right to know, including Mrs. Chastant, and the prosecuting authority's ability to preserve the integrity of the investigation, weigh strongly in favor of delaying this discovery under either federal or state law. However, the delay is not indefinite, since by its nature the privilege expires upon the lapse of an unreasonable period of time. *Brown v. Thompson*, 430 F. 2d 1214, 1215(5th Cir. 1970).

Counsel for the sheriff agreed that, at such time as the DNA/carpet fiber evidence came back and the district attorney made a decision whether to bring the

case to the grand jury, there would be no problem with the deposition going forward, and therefore, production of the statement summaries of Viera. The district attorney may have a different view, however, and therefore, the Court will order that, no earlier than 90 days from the date of this Court's order, if the deposition has not gone forward and/or the requested information has not been produced voluntarily, counsel for the movants may re-urge their request for the discovery sought.

## *Conclusion*

The court finds that the motions to quash are well grounded by applying the factors required under either the Louisana Public Records Act or federal common law. However, the Court also finds that the plaintiff and defendant may be entitled to the information at a later point in time, i.e. when the laboratory results are returned to the investigating authority and a decision is made whether to present the case to the Grand Jury. Therefore, the Court will allow the parties to re-urge their request for the discovery sought if the same has not been provided voluntarily within ninety days of this Court's order. If the prosecuting authority still has a basis for protecting the information from disclosure at that time, it may seek relief from the court.

Signed at Lafayette, Louisiana this 8th day of September, 2011.